IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH W. CHAIT, individually and on behalf of those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, GEORGE GASCON, in his individual and official capacity as Chief of Police of the San Francisco Police Department, R. DELA VEGA, (Badge #1823) in his individual and official capacity as a Police Officer of the San Francisco Police Department, RONNIE M. WAGNER, in her individual and official capacity as a Police Officer/Police Department Attorney of the San Francisco Police Department, and DANIEL YAWCZAK, (Badge #1810) in his individual and official capacity as a Police Officer of the San Francisco Police Department,<br><br>    Defendants.<br>                                                                                                                                                                           / | No. C 10-02194 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this Section 1983 action brought by a pawnshop owner for deprivation of due process, defendants' motion for summary judgment on all of plaintiff's claims is now **GRANTED**.

**STATEMENT**

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel have an obligation to lay out their evidentiary support clearly. In *Carmen v. San Francisco Unified School District*, 237 F.3d 1026,

1031 (9th Cir. 2001), the court of appeals held that "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." In this regard, where citations herein are to a brief only it is because counsel have failed to provide a cite to the record and the Court, after making a reasonable search, has been unable to identify factual support in the record.

*          *          *

This action complains about the police returning property, previously seized as evidence, later than the pawnshop owner would have liked. Here are the facts. Plaintiff Joseph Chait is the managing officer and part owner of a San Francisco pawnshop named Provident Loan Association. Defendants are the City and County of San Francisco, and other city employees, including former police chief and San Francisco police officers.

On June 16, 2009, Cedric Darrett and Virginia Perez Pardo, a woman Darrett met online, went to Sun Trading Company where Pardo purchased a Rolex watch for $6,132 on her credit card (Opp. 2; Br. 9). Later that day, Darrett sold the watch to Provident for $3,000 (Dkt. No. 5, Chait Decl. ¶ 2; Br. 9; Opp. 2). On July 2, Darrett went back to Sun Trading Company and purchased three Rolex watches for a total of $19,000 (Wagner Decl. Exh. A at 56–57; Br. 7; Opp. 3). He presented three personal checks as payment for the watches and told employee Brian Sun to hold two of the three checks until July 6 (*ibid.*). Sun contacted Darrett's bank and found out the account from which Darrett's checks were drawn was closed (Wagner Decl. Exh. B at 4; Br. 7; Opp. 3–4). Later that day, Darrett sold all three watches to Provident for $7,600 (Wagner Decl. Exh. A at 60; Br. 7; Opp. 4).

On July 8, two men named Yekutiel Chezkian and Yitzchak Makaran, entered Sun Trading Company and "tried to sell the Suns the same three Rolexes as Darrett had bought from Sun Trading on July 6 using bad checks" (Br. 8; *see* Wagner Decl. Exh. C at 40). The Suns reported the incident to the San Francisco Police Department and the police department seized the three Rolexes from Chezkian and Makaran as evidence and provided Chezkian with a property receipt, although those three watches turned out not to be the three at issue on July 2 (Wagner

Decl. Exh. C at 41; Br. 8). This occurrence prompted Sun and his sister to go to Provident because Chezkian and Makaran mentioned they had seen three other new Rolex watches there (Snodgrass Decl. Exh. B at 47, 51). At Provident, the Suns found "three Rolexes whose serial numbers matched those of the Rolexes that Darrett had bought from Sun Trading [on July 2] with bad checks" (Br. 8; Snodgrass Decl. Exh. B at 55–56; Opp. 5).

Catherine Sun immediately went to the SFPD. She reported to Officer Romeo Dela Vega that the three Rolexes purchased with checks drawn from a closed account were at Provident (Snodgrass Decl. Exh. C at 8–9; Opp. 5). Ms. Sun showed Officer Dela Vega the SFPD incident report from a previous reporting on the watches, "which listed the serial numbers of the watches Darrett had bought from Sun Trading on July 2" (Br. 8; Snodgrass Decl. Exh. C at 14; Opp. 5–6). Officer Dela Vega went to Provident pawnshop, confirmed the serial numbers matched those identified on the police report, and placed a statutory 90-day hold on the three Rolexes (Snodgrass Decl. Exh. C at 17–18; Opp. 6). Using "Leadsonline.com," he then identified yet another watch at Provident as a watch Pardo and Darrett had purchased — the one purchased on Pardo's credit card. Officer Dela Vega returned to Provident the next day and placed a hold on that watch too (Snodgrass Decl. Exh. C at 40, 43; Opp. 6 ).

SFPD assigned Inspector Daniel Yawczak to investigate. He learned that Darrett, also known as the "Credit Doctor," had purported to be able to assist Pardo with her credit problems when he met her online and had instructed her to charge her credit cards to their limits whereupon he would negotiate with the issuer banks (Wagner Decl. Exh. A at 55; Br. 9). After Pardo paid for three Rolexes purchased on June 16 with her credit card, only one of which is at issue here, Darrett took possession of the watches and Pardo never saw them again (Wagner Decl. Exh. A at 55–56). Inspector Yawczak also learned from Citibank that the account "on which Darrett had written checks to Sun Trading, as well as to Ms. Perez Pardo . . . had been closed since September 2008" (Br. 10; Wagner Decl. Exh. A at 56).

Thus, on September 3, Inspector Yawczak went to Provident and told Ben Shemano, a Provident employee, that he was seizing the four Rolex watches that had been put on hold in order to book those watches into evidence (Snodgrass Decl. Exh. D at 71). The Inspector

3

1  provided a receipt to Shemano and stated that the watches would not be released without a court
2  order (Snodgrass Decl. Exh. D at 73; Br. 10).  Plaintiff asserts that the Inspector removed all four
3  watches "from [p]laintiff Chait and San Francisco Provident Loan Association" "[d]espite the fact
4  that there were then no pending criminal proceedings against Darrett" (Opp. 6).

5        In August 2009, the San Francisco District Attorney's Office filed a felony complaint
6  against Darrett charging him with nine criminal violations, "including counts for passing bad
7  checks, for burglary, for grand theft, and for obtaining money and property under false pretenses
8  (Br. 10; Wagner Decl. Exh. S).  Darrett pled guilty to count one for a violation of Section 476 of
9  the California Penal Code (forgery, fictitious or altered bills, notes, or checks) and to count six for
10 a violation of Section 532(a) of the Penal Code (false pretenses, obtaining money, labor or
11 property) (Br. 10).  Plaintiff asserts that neither of these two counts involved the watches at issue
12 here (Wagner Decl. Exh. R at 414; Opp. 7).

13       After the conclusion of the criminal prosecution, SFPD assigned Ronnie Wagner, an
14 attorney in the legal division, to the matter (Wagner Decl. ¶ 6; Br. 11).  Defendants state that once
15 the criminal prosecution concluded, "the District Attorney's Office failed to obtain any ruling
16 from the criminal court as to who should receive the . . . four Rolexes seized from Provident"
17 (Wagner Decl. ¶ 3; Br. 11).  On February 24, 2010, Wagner "sent a letter to each person who
18 claimed or might colorably claim to own one or more of the Rolex watches:  plaintiff Chait,
19 Catherine and Brian Sun, Virginia Perez Pardo, Yekutiel Chezkian, and Shalom Makaran" (Br.
20 11–12; Wagner Decl. ¶¶ 22–24, Exhs. I, J).  The letter sent to Chait, "who[] the criminal
21 investigation had not identified as owner[] of the watches before Darrett's malfeasance," stated
22 that "the investigation . . . determined that certain of the seized items belonged to someone other
23 than you" and stated that if there were competing claims of ownership, the Assistant District
24 Attorney would provide notice of a hearing (Opp. 7; Br. 12; Wagner Decl. Exhs. I, J).  Plaintiff's
25 attorney responded.  He insisted that "SFPD needs to comply with the controlling statute,
26 [California Business and Professions Code Section 21647], [and] [i]mmediately return the
27 watches, and make the appropriate notifications" (Wagner Decl. Exh. K).  Wagner responded by
28 letter explaining that California Business and Professions Code Section 21647 did not control

4

1    because SFPD had possession of the watches, not Provident, and stated that SFPD was
2    proceeding under the California Financial Code and California Penal Code and that plaintiff's due
3    process rights would be preserved because he would have notice and an opportunity to be heard at
4    a hearing before the criminal court (Wagner Decl. Exh. L; Br. 12). Plaintiff's attorney responded
5    restating his initial position (Wagner Decl. Exh. N; Br. 12–13).

    On May 27, 2010, Assistant District Attorney Richard Richardson informed Wagner that
upon revisiting the two counts in the complaint to which Darrett pled guilty, he now believed that
they "did *not* relate to the watches Darrett had purchased from Sun Trading using those bad
checks" (Wagner Decl. ¶ 32) (emphasis in original). Wagner learned, based on review of the file,
that "the criminal court had never adjudicated, via guilty plea or otherwise, that the three watches
that Darrett had purchased from Sun Trading with bad checks on July 2, 2009 . . . were stolen
property" and that nothing in the plea connected Darrett's admissions to the fourth watch that was
purchased by Pardo (Br. 13; Wagner Decl. ¶¶ 34–38). In fact, the remaining counts had been
dismissed in the interest of justice (Wagner Decl. ¶ 34; Br. 14). In a letter dated August 20,
Wagner informed plaintiff that the four Rolex watches seized from Provident were being released
to him and could be picked up from SFPD (Wagner Decl. ¶ 38).

    Plaintiff filed this action as a class action and simultaneously sought a temporary
restraining order and order to show cause for a preliminary injunction, seeking to compel
defendants to "maintain custody of the watches" seized from Provident (Dkt. No. 7 at 2). The
temporary restraining order was denied (Dkt. No. 18). Plaintiff did not file a class certification
motion; the deadline has passed (Dkt. No. 31). The complaint asserts four claims for relief: (1)
violation of procedural due process rights under the Fourteenth Amendment; (2) violation of due
process under the California Constitution; (3) violation of Section 1983 for deprivation of
Fourteenth Amendment due process rights; and (4) declaratory relief.

## ANALYSIS

    Summary judgment is proper when "there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for
summary judgment would bear the burden of proof at trial, that party bears the initial burden of

5

producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

The essence of our problem is that the police seized the watches as evidence and did not return them to the owner-pawnbroker as quickly as deserved, although they were returned within a year of the seizure.

Each of plaintiff's claims is premised on an interpretation of California law that is incorrect. The statutes at issue govern disposition of property that is placed on hold or seized from a pawnbroker by law enforcement. Plaintiff contends "that *G&G Jewelry* [*v. City of Oakland*, 989 F.2d 1093 (9th Cir. 1993)] and Bus. & Prof. Code § 21647 are the sole disposition mechanism when items are placed on hold," even if those items are subsequently taken from the pawnshop (Opp. 10). This is not the law now, if it ever was.[*]

---

[*] The California Business and Professions Code Section 21647(d) states:

> When property that is in the possession of a pawnbroker, secondhand dealer, or coin dealer is subject to a hold as provided in subdivision (a), and the property is no longer required for the purpose of a criminal investigation, the law enforcement agency that placed the hold on the property shall release the hold on the property. When the law enforcement agency has knowledge that the property has been reported lost or stolen, the law enforcement agency shall then make notification to the person who reported the property as lost or stolen pursuant to subdivision (c).

By its terms, this provision does *not* address the issue of disposition of property that is no longer in the pawnbroker's possession. The plain language appears only to apply to property "that is in the possession of the pawnbroker." Yet, plaintiff contends that California Business and Professions Code Section 21647 governs disposition of property, whether it is in the possession of the pawnbroker or not, if the property in question had been subject to a hold. The plain language by itself does *not* appear to support that argument.

6

In 2003, our court of appeals held that "when law enforcement officers seize allegedly stolen property, *Cal. Fin. Code § 21206.8 and Cal. Penal Code §§ 1407 et seq.*, govern the subsequent disposition of the property." *Zeltser v. City of Oakland*, 325 F.3d 1141, 1144 (9th Cir. 2003), citing *Sanders v. City of San Diego*, 93 F.3d 1423, 1432 (9th Cir. 1996). California Financial Code Section 21206.8 states:

> (a) Notwithstanding the provisions of Chapter 12 (commencing with Section 1407) of Title 10 of Part 2 of the Penal Code, whenever property alleged to have been stolen or embezzled is taken from a pawnbroker, the peace officer, magistrate, court, clerk, or other person having custody of the property shall not deliver the property to any person claiming ownership unless the provisions of this section are complied with.
>
> (b)(1) If any person makes a claim of ownership, the person having custody of the property shall notify the pawnbroker. (2) If the pawnbroker makes no claim with respect to the property within 10 days of such notification, the property may be disposed of as otherwise provided by law.
>
> (c) If property alleged to have been stolen or embezzled is taken from a pawnbroker, prior to any disposal of the property pursuant to Section 1411 of the Penal Code, the notice to be given to the owner and owner of a security interest pursuant to Section 1411 shall be given to the pawnbroker. Such property shall not be disposed of pursuant to Section 1411 until three months after such notice has been given.
>
> (d) A pawnbroker shall not be liable to any person for any property seized from the pawnbroker on account of the pawnbroker's inability to return the property to that person because of the seizure.

In *Zeltser*, law enforcement initially placed a 90-day hold on the allegedly stolen property and after further investigation, which matched the fingerprints of the person who pawned the ring to the identified suspect, Oakland Police Department seized the ring from the pawnshop owner pursuant to a search warrant and preserved it as evidence for a criminal prosecution. 325 F.3d 1143.

Ignoring *Zeltser*, plaintiff asserts that "there was no statutory provision other than the return of the Plaintiff's property consistent with the holding of *G&G Jewelry* and Bus. & Prof. Code § 21647 which could have protected Plaintiff's due process rights" (Br. 13). In *G&G Jewelry*, the court stated "[i]f the police require the property as evidence in a criminal investigation, it is implicit in the [California Business and Professions Code Section 21647]

7

1 statutory scheme that the police must return the property to the pawnbroker upon termination of
2 their need for the property." 989 F.2d at 1098. However, in *Sanders*, where there was a seizure
3 of property for criminal investigative purposes, the court specifically stated that the interpretation
4 of California Business and Professions Code Section 21647 stated in *G&G Jewelry* does not
5 control. *Sanders*, 93 F.3d at 1432. In reaching this conclusion, the court in *Sanders*, relied on the
6 fact that the "Financial Code § 21206.8 and Penal Code §§ 1407–13 directly address the disposal
7 of stolen property seized from a pawnbroker and remaining in the custody of the police" and
8 therefore applied those provisions, not Section 21647. *Ibid.*

9 Plaintiff contends that reliance on *Sanders* is improper because in that decision the court
10 only decided the issue of whether California Business and Professions Code Section 21647
11 exclusively governs disposal of property seized from a pawnbroker by the police but did not
12 consider whether it governs in situations where the property had been previously placed on hold.
13 This is incorrect and out of step with our court of appeal's recent holding in *Zeltser*.

14 California Financial Code Section 21206.8, *not* California Business and Professions Code
15 Section 21647 governs the disposition of property that is suspected to be stolen and therefore
16 seized from a pawnbroker for criminal investigative purposes. California Business and
17 Professions Code governs the disposition of property that is in a pawnbroker's possession and
18 subject to a hold but has not been seized by law enforcement.

19 The record shows that on September 3, Inspector Yawczak went to Provident and seized
20 the four Rolex watches that had been put on hold in order to book those watches into evidence
21 (Snodgrass Decl. Exh. D at 71). The Inspector provided a receipt to Shemano, a Provident
22 employee, upon seizing the watches (Br. 10). In his own sworn discovery response, plaintiff
23 admitted he "makes no . . . assertion" that "defendants acted unlawfully in removing the Rolex
24 watches from [plaintiff's] possession on or about September 3, 2009" (Snodgrass Decl. Exh. E,
25 Interrogatory No. 15); *see also* (Snodgrass Decl. Exh. A at 81 (stating in his deposition testimony
26 that he, Chait, did not believe the 90-day holds were unlawful)). A reasonable trier of fact could
27 not conclude that the watches were *not* seized and merely subject to a hold.

28

8

Financial Code Section 21206.7 also specifically addresses only property that is *alleged to be stolen*. It is undisputed that Catherine and Brian Sun reported to SFPD that Darrett had purchased three watches from Sun Trading on checks drawn from a closed account (Wagner Decl. Exh. B at 4). Inspector Yawczak verified the account was closed in September 2008 (Wagner Decl. Exh. A at 56). Officer Dela Vega, who placed the watches on hold, in a sworn statement, indicated he "believed that [the watches] may be the stolen watches listed on the police report" (Opp. Exh. 3 at 36). Indeed, Darrett was charged in August 2009, with obtaining the Rolex watches at issue through fraudulent means, among other things (Wagner Decl. Exh. S). The record supports a conclusion that the watches were, indeed, alleged to be stolen. Plaintiff contends that there was no probable cause to believe that the watches were stolen, but Section 21206.7 does not require probable cause, only that the property is alleged to be stolen.

Each of plaintiff's claims is grounded in his contention that defendants deprived him of property without due process of law by not complying with the provisions of California Business and Professions Code Section 21647. Because Section 21647 does not govern here, plaintiff's claims fail as a matter of law.

## CONCLUSION

Defendants' motion for summary judgement is hereby **GRANTED**. Judgment will be entered in favor of defendants.

**IT IS SO ORDERED.**

Dated: October 7, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9